**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Plaintiff ) | Case No.: 2:16-cv-01199-GMN-CWH |
| vs. ) | |
| ) | **ORDER** |
| PUEBLO AT SANTE FE CONDOMINIUM ) | |
| ASSOCIATION, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 48),

filed by Bank of America, N.A. ("Plaintiff"). Defendant Pueblo at Sante Fe Condominium

Association, Inc. ("HOA") and Defendant Keynote Properties, LLC ("Keynote") (collectively

"Defendants") filed Responses, (ECF Nos. 57, 58). Plaintiff then filed a Reply, (ECF No. 59).

Also pending before the Court is Plaintiff's Supplemental Motion for Partial Summary

Judgment, (ECF No. 60). HOA and Keynote filed Responses, (ECF Nos. 61, 62), and Plaintiff

filed a Reply, (ECF No. 65).

For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Partial

Summary Judgment, (ECF No. 48), and **GRANTS** Plaintiff's Supplemental Motion for Partial

Summary Judgment, (ECF No. 60).[1]

**I.      BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 6909

Squaw Mountain Drive, Unit 204, Las Vegas, Nevada 89130 (the "Property"). (*See* Deed of

Trust, Ex. 1 to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 48-1). In 2006, Jennie Dubinsky

("Borrower") purchased the Property by way of a loan in the amount of $120,000.00, secured

---

[1]  Also pending before the Court is Plaintiff's Motion to Stay Case, (ECF No. 49). Because this Order closes the case, the Court denies Plaintiff's Motion as moot.

1    by a deed of trust (the "DOT"). (*Id.*). American Sterling Bank served as the original lender for

2    the DOT, and Mortgage Electronic Registration System, Inc. ("MERS") was the nominal

3    beneficiary on behalf of that Bank. (DOT, Ex. 1 to Pl.'s MSJ).[2]

4         Fannie Mae purchased the DOT in August 2006. (Decl. John Curcio ¶ 5, Ex. 2 to Pl.'s

5    MSJ, ECF No. 48-1); (Loan Transaction History, Ex. A to Decl. John Curcio, ECF No. 48-1).

6    On January 23, 2013, Plaintiff received an assignment of the DOT from the original lender,

7    American Sterling Bank. (Assignment of DOT, Ex. 3 to Pl.'s MSJ, ECF No. 48-1) (showing a

8    recorded assignment on January 23, 2013).

9         Upon Borrower's failure to stay current on payment obligations, Alessi and Koenig,

10   LLC ("A&K"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of

11   delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice

12   of Delinquent Assessment Lien, Ex. 5 to Pl.'s MSJ, ECF No. 48-1); (Notice of Default, Ex. 6 to

13   Pl.'s MSJ, ECF No. 48-1).

14        On October 23, 2012, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles

15   Bauer"), on Plaintiff's behalf, sent a letter to A&K requesting a ledger with the amount of

16   HOA's superpriority lien. (*See* Request for Accounting at 6–7, Ex. 1 to Miles Aff., ECF No.

17   60-1). A&K accordingly responded with a ledger. (*See* Statement of Account, Ex. 2 to Miles

18   Aff., ECF No. 60-1). Miles Bauer, on behalf of Plaintiff, subsequently delivered a check to

19   A&K for $1,720.60, based on the provided ledger, purportedly representing nine months' worth

20   of HOA assessments. (*See* Tender Letter, Ex. 3 to Miles Aff., ECF No. 60-1).

21        Nevertheless, A&K proceeded with the foreclosure by recording a notice of foreclosure

22   sale and foreclosing on the Property. (*See* Notice of Trustee's Sale, Ex. 7 to Pl.'s MSJ, ECF No.

---

24   [2]  The Court takes judicial notice of the public property records attached as exhibits to Plaintiff's Motion for
25   Summary Judgment, (ECF No. 48-1). *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d
     861, 866 n.1 (9th Cir. 2004) (citing *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir.2001)); *Harlow v. MTC Fin.
     Inc.*, 865 F. Supp. 2d 1095, 1099 (D. Nev. 2012).

48-1).  On June 13, 2013, Keynote recorded a foreclosure deed, stating it purchased the

Property for $9,300. (Foreclosure Deed, Ex. 8 to Pl.'s MSJ, ECF No. 48-1).

Plaintiff filed its Complaint on May 27, 2016, asserting the following causes of action arising from the Property's foreclosure sale: (1) declaratory relief pursuant to 28 U.S.C. § 2201; (2) violation of the Housing and Economy Recovery Act of 2008; (3) quiet title; and (4) breach of Nevada Revised Statute 116.1113; (5) wrongful foreclosure; and (6) injunctive relief. (*See* Compl. ¶¶ 7–96, ECF No. 1).

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. __DISCUSSION__

Plaintiff moves for partial summary judgment on its quiet title and declaratory relief claims, asserting that 12 U.S.C. § 4617(j)(3) (the "Federal Foreclosure Bar") compels the Court to find that the HOA's foreclosure sale did not extinguish Plaintiff's DOT on the Property. (Pl.'s MSJ 2:1–10, ECF No. 48). Plaintiff also argues that summary judgment is warranted because Plaintiff properly tendered the superpriority portion of HOA's lien prior to the Property's foreclosure sale, thus serving as an additional route to prevent the foreclosure sale from extinguishing Plaintiff's DOT. (Pl.'s Supp. MSJ 2:3–8, ECF No. 60).

Defendants, in response, argue that Plaintiff has not provided sufficient evidence to establish Fannie Mae's interest in the Property at the time of foreclosure, and that the Federal Foreclosure Bar does not preempt the applicable Nevada law that authorized the foreclosure sale's extinguishment of Plaintiff's DOT. (HOA's Resp. 4:23–8:1, ECF No. 57); (Keynote's Resp. 4:5–6:8, ECF No. 58). Defendants also oppose Plaintiff's Motion by arguing, *inter alia*, that Plaintiff's purported tender did not satisfy HOA's superpriority lien because the attempted tender contained impermissible conditions, rendering the attempted tender invalid. (Keynote's Resp. 2:10–3:12, ECF No. 61); (HOA's Resp. 2:9–4:12, ECF No. 62). The Court's discussion below first addresses the applicability of the Federal Foreclosure Bar to this case.

### A. Federal Foreclosure Bar

The Federal Foreclosure Bar prohibits foreclosures of federally owned or controlled property "without the consent of the [Federal Housing Finance Agency]." 12 U.S.C. § 4617(j)(3) (2012); *see Saticoy Bay, LLC, Series 2714 Snapdragon v. Flagstar Bank, FSB*, 699 F. App'x 658 (9th Cir. 2017). Moreover, the Ninth Circuit's decision in *Berezovsky v. Moniz*, 869 F.3d 923, 932 (9th Cir. 2017), decided that the Federal Foreclosure Bar preserves the property interests of the Federal Housing Finance Agency (the "Agency"), including a government-sponsored enterprise of the Agency such as Fannie Mae, from an HOA's

foreclosure sale under NRS 116.3116, if that sale occurred without the affirmative consent of the Agency. *Id.* at 927–32.

Here, Plaintiff establishes its status as Fannie Mae's loan servicer on the Property; and thus, Plaintiff has standing to assert the Federal Foreclosure Bar. *See e.g.*, *Saticoy Bay, LLC Series 2714 Snapdragon v. Flagstar Bank, FSB*, 699 Fed. App'x 658 (9th Cir. 2017) (holding a loan servicer acting as Fannie Mae's agent may assert federal preemption); (Decl. John Curcio ¶ 10, Ex. 2 to Pl,'s MSJ, ECF No. 48-1) (explaining Plaintiff's status as Fannie Mae's loan servicer at the time of Property's foreclosure sale); (Loan Transaction History at 33–43, Ex. A. to Decl. John Curcio, ECF No. 48-1).

The next issue, then, is whether Plaintiff provides evidence that Fannie Mae owned an interest in Plaintiff's DOT at the time of the foreclosure sale, thereby invoking the Federal Foreclosure Bar's protections. The circuit's decision in *Berezovsky v. Moniz* guides the Court's analysis. 869 F.3d 923 (9th Cir. 2017). That is, even though Defendants challenge Plaintiff's proof of Fannie Mae's interest in Plaintiff's DOT, Plaintiff provides evidence nearly identical to that which the Ninth Circuit in *Berezovsky* found sufficient to show Freddie Mac's interest in a property lien.[3] Specifically, Plaintiff provides Fannie Mae's business records showing that Fannie Mae purchased the original loan secured on the Property in 2006, and maintained ownership at the time of the Property's May 29, 2013 foreclosure sale. (Decl. John Curcio ¶ 5, ECF No. 48-1); (Loan Transaction History, Ex. A to Decl. John Curcio, ECF No. 48-1); *see Berezovsky*, 869 F.3d at 932–933.[4]

---

[3] At the time of the Property's foreclosure sale, Freddie Mac was similar to Fannie Mae in that both were under the conservatorship of the Federal Housing Finance Agency (the "Agency")—meaning the Agency temporarily owned and controlled Freddie Mac and Fannie Mae's assets. *See Berezovsky v. Moniz*, 869 F.3d 923, 926 (9th Cir. 2017); *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1148 (D. Nev. 2015).

[4] Fannie Mae maintained its business records on its Servicer and Investor Reporting ("SIR") Platform, which is an "electronic system of record that contains information regarding mortgage loans acquired and owned by Fannie Mae." (Decl. John Curcio ¶ 4, ECF No. 48-1). Based upon the Declaration of John Curcio, the Court finds that these records were kept in the ordinary course of Fannie Mae's business, created at or near the time of

Defendants point out that Fannie Mae does not appear on Plaintiff's DOT, and thus Defendants claim there is at least a dispute of material fact about Fannie Mae's interest. (HOA's Resp. 4:24–5:27, ECF No. 57); (Keynote's Resp. 2:21–4:3, ECF No. 58). However, Fannie Mae's absence from the DOT, by itself, is insignificant here. To explain, Plaintiff provides evidence that the original lender on the Property was American Sterling Bank, and MERS was the beneficiary on behalf of that Bank. (DOT, Ex. 1 to Pl.'s MSJ, ECF No. 48-1). Plaintiff's evidence then reveals how Fannie Mae gained an interest in the DOT in August 2006; and roughly four months before the Property's foreclosure sale, Plaintiff received an assignment of the DOT from the original lender, American Sterling Bank, thereby entering into a principle-agent relationship with Fannie Mae. (Assignment of DOT, Ex. 3 to Pl.'s MSJ, ECF No. 48-1) (showing a recorded assignment on January 23, 2013). Indeed, Fannie Mae illustrates the mechanics of this principle-agent relationship through its "Guide," which is the "central document governing the contractual relationship between Fannie Mae and its loan servicers." (*See* Fannie Mae's Servicing Guide Citations at 51–53, Ex. 4 to Pl.'s MSJ, ECF No. 48-1); (Decl. John Curcio ¶ 11, ECF No. 48-1). Under Nevada law, this agency relationship then permitted Fannie Mae to retain its property interest on the Property even though the recorded DOT does not name Fannie Mae. *See Berezovsky*, 869 F.3d at 932; *see also In re Montierth*, 354 P.3d 648, 650–51 (2015) (citing Restatement (Third) of Property: Mortgages § 5.4 cmt. c (Am. Law. Inst. 1997)); *Nationstar Mortg., LLC v. Guberland LLC-Series 3*, 420 P.3d 556 at *2 (Nev. 2018) (unpublished disposition).

Altogether, because Fannie Mae's interest in the Property is valid and enforceable under Nevada law, Plaintiff—as Fannie Mae's servicer—can properly invoke the Federal Foreclosure

---

each recorded event, and thus can properly support Plaintiff's Motion for Summary Judgment. *See U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (affirming district court's admission of payment history summaries maintained in electronic format and compiled in the regular course of business.).

Bar to preclude the Property's foreclosure sale from extinguishing Plaintiff's DOT. Further,

Defendants do not satisfy their burden of providing, or pointing to, any evidence that raises

more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). Defendants thus fail to preclude summary judgment on

the Federal Foreclosure Bar's applicability to this case.

Keynote contends that, even if the Federal Foreclosure Bar applies, the Bar cannot

override its status as a bona fide purchaser of the Property. (Keynote's Resp., ECF No. 4:5–

6:8). Courts in this District have already rejected this argument, and the Court continues to do

so here. In line with the circuit's decision in *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir.

2017), "[a]llowing Nevada's law on bona fide purchasers to control . . . would be 'an obstacle

to Congress's clear and manifest goal of protecting [Fannie Mae's] assets in the face of

multiple potential threats, including threats arising from state foreclosure law.'" *JPMorgan*

*Chase Bank, N.A. v. GDS Fin. Servs.*, No. 2:17-cv-02451-APG-PAL, 2018 WL 2023123, at \*3

(D. Nev. May 1, 2018) (citing *Berezovsky*, 869 F.3d at 931); *see Summit Real Estate Grp., Inc.*

*v. Fed. Home Loan Mortg. Corp.*, No. 2:15-cv-00760-KJD-GWF, 2019 WL 918980, at \*4 (D.

Nev. Feb. 25, 2019). Thus, even if Keynote were a bona fide purchaser, Keynote cannot

prevail.

**B.    Tender of the Superpriority Portion of HOA's Lien**

In addition to the Federal Foreclosure Bar preventing extinguishment of Plaintiff's DOT,

Plaintiff also tendered payment of the HOA's superpriority lien amount prior to the Property's

foreclosure. As explained below, tender is an additional reason that the Property's May 29,

2013 foreclosure sale did not extinguishing Plaintiff's DOT.

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority

portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See*

*SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's

unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on December 20, 2012, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, ("Miles Bauer"), on behalf of Plaintiff, sent a letter to HOA's agent, Alessi & Koenig, LLC ("A&K"), alongside a check for $1,720.60. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 60-1). Plaintiff calculated that amount based on nine months of owed assessments, which ranged from $100 per month to $133.40 per month, and $520.00 in collection costs. (MSJ 2:21–3:2, ECF No. 60); (Borrower Account History Report, Ex. 2 to Miles Bauer Aff., ECF No. 60-1). An accounting ledger provided by the HOA prior to the Property's foreclosure sale confirms Plaintiff's calculation. (*See* Borrower Account History Report, Ex. H to Reply, ECF No. 85-8). Thus, Plaintiff's tender of the $1,720.60 check to A&K undisputedly satisfied the HOA's outstanding superpriority lien, and A&K received the check before rejecting it. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff.); (Confirmation of Receipt, Ex. 4 to Miles Bauer Aff., ECF No. 60-1).

Keynote and HOA, in turn, have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, that the lien included nuisance and abatement charges, or that Plaintiff never delivered the letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's Tender Letter, in relevant part, contains the following language:

> Our client has authorized us to make payment to you in the amount of $1,720.60 to satisfy its obligations to the HOA as a holder of the

first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to Alessi & Koenig, LLC in the sum of $1,720.60. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 6906 Squaw Mountain Drive #204 have now been "paid in full."

(Tender Letter, Ex. 3 to Miles Bauer Aff.).

Defendants argue that the tender was invalid because the tender letter included impermissible conditions and false statements. (*See* Keynote's Resp. 2:11–3:12, ECF No. 61); (HOA's Resp. 3:14–4:12, ECF No. 62). Defendants asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*See* Keynote's Resp. 2:11–3:12); (HOA's Resp. 3:14–4:12). Accordingly, Defendants contends that rejection of Plaintiff's payment was made in good faith. (*See* Keynote's Resp. 2:11–3:12, ECF No. 61); (HOA's Resp. 3:14–4:12, ECF No. 62).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[5] Therefore, to the extent Defendants assign impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the

---

[5] The tender letter before the Nevada Supreme Court contained the following paragraph:

This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

1  reasoning of the Nevada Supreme Court and finds this language constitutes a condition on

2  which Plaintiff had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

3      Defendants argue that this condition is improper because it disregards any nuisance

4  changes that may arise. (HOA's Resp. 4:4–12). Because the letter omits any reference to those

5  charges, Defendants contend that acceptance of the tender would force them to accept a

6  misstatement of the law. (*Id.*). In this case, however, Defendants do not reveal any charges

7  incurred during the relevant time period that would have been impermissibly waived. Thus,

8  acceptance of the letter's facts in this regard would not force the waiver of any charges that the

9  HOA was entitled to request.

10     Because Plaintiff's tender satisfied the HOA's superpriority lien, Defendants cannot

11 prevail even if the Court were to find Keynote was a bona fide purchaser for value. "A

12 foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no

13 longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1*, LLC, 427 P.3d 113, 121 (2018)

14 ("Because a trustee has no power to convey an interest in land securing a note or other

15 obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire

16 title to that property interest."). Accordingly, in light of Plaintiff's tender, Keynote's status as a

17 bona fide purchaser is immaterial.

18     Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied HOA's

19 superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's

20 DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property and

21 Keynote's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for

22 Summary Judgment, as to its quiet title claim, is granted.

23     **C.  Plaintiff's Remaining Claims**

24     In its prayer for relief, Plaintiff requests an order declaring: "12 U.S.C. § 4617(j)(3)

25 preempts any Nevada law that would permit a foreclosure on a super-priority lien to extinguish

a property interest of Fannie Mae while it is under FHFA's conservatorship"; and "the HOA foreclosure sale did not extinguish [Plaintiff's] interests and thus the property was not transferred free and clear to Keynote." (Compl. 16:16–23, ECF No. 1).  Plaintiff's other requested forms of relief are phrased in the alternative. (*See id.* 16:24–17:8).  Because the Court finds that 12 U.S.C. § 4617(j)(3) prevents Plaintiff's DOT from being extinguished by the Property's foreclosure sale, in addition to Plaintiff's tender of the superpriority amount preventing extinguishment, Plaintiff therefore receives the relief it requested.  The Court accordingly dismisses Plaintiff's remaining claims as moot.  As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff also moots this claim, and it is therefore dismissed.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 48), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that Plaintiff's Supplemental Motion for Partial Summary Judgment, (ECF No. 60), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Case, (ECF No. 49), is **DENIED as moot**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __25__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court